IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                                     No. CR 14-2025 JB

JEAN CLAUD MILLS,

      Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on the Amended Petition for Revocation of Supervised Release, filed December 9, 2025 (Doc. 93)("Petition").  The Court holds an evidentiary hearing on February 9, 2026.  See Clerk's Minutes at 1, filed February 9, 2026 (Doc. 104)("Clerk's Minutes"); Draft Hearing Transcript of Proceedings at 1 (taken February 9, 2026)(Court)("2026 Tr.").[1]  The primary issue is whether Defendant Jean Claud Mills commits, as a matter of law, a Grade C violation, where a mandatory condition of his supervised release states he must not commit another federal, state, or local crime and he pleads guilty to violating the City of Rio Rancho's Municipal Ordinance 12-6-18, which results in Mills only paying a fine without serving any term of imprisonment.  The Court concludes that Mills commits, as a matter of law, a Grade C violation, where a mandatory condition of his supervised release states he must not commit another federal, state, or local crime and he pleads guilty to violating Rio Rancho's Municipal Ordinance 12-6-18, which result in Mills only paying a fine, without serving any term of imprisonment, because the maximum penalty Mills could face is not more than ninety days of imprisonment even if Mills chooses to only pay a fine.

---

[1] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

**FACTUAL BACKGROUND**

Mills admits to the Petition's facts.  See 2026 Tr. 5:11-12 (Hoswell)(responding to the Court's question about whether Mills is making a legal argument: "Yes"); id. at 5:6-8 (Hoswell)("Your Honor, I think the simplest way to it is he would deny that the conduct constitutes a violation.").  Accordingly, the Court briefly discusses its findings of fact below before addressing his legal arguments.

1.      On August 7, 2025, Rio Rancho (New Mexico) Police issues Mills a citation for "Prohibited Use of Electronic Device While Driving."  Petition at 1.

2.      Using an electronic device while driving violates "Rio Rancho Municipal Ordinance 12-6-18."  Petition at 1.

3.      On September 2, 2025, Mills "plead guilty and paid a fine of $100 and court costs of $93."  Petition at 1.

4.      A mandatory condition of Mills' supervised release is that he "must not commit another federal, state, or local crime."  Petition at 1.

**LAW REGARDING SUPERVISED RELEASE**

A district court's decision-making with regard to violations of supervised release conditions comes in two phases.  First, at sentencing, the court must decide whether to impose a term of supervised release and, if so, how long a term to impose and what conditions to associate with it.  Second, while the defendant is on supervised release, if the United States accuses the defendant of violating a condition of supervised release, the court must determine whether the defendant has violated the conditions, whether to revoke supervised release, and, if the court revokes supervised release, what disposition to impose for the violation.

1.      **Imposition of Supervised Release.**

A court, "in imposing a sentence to a term of imprisonment for a felony or a misdemeanor,

may [and sometimes must] include as a part of the sentence a requirement that the defendant be

placed on a term of supervised release after imprisonment." 18 U.S.C. § 3583(a) (brackets added).

As part of a defendant's supervised release, the law binds the defendant to abide by certain

conditions of his release. See 18 U.S.C. § 3583(d). Section 3583 of Title 18 of the United States

Code sets forth some of the standard and discretionary conditions that courts shall and may impose

as part of supervised release:

> **Conditions of supervised release.** -- The court shall order, as an explicit condition
> of supervised release, that the defendant not commit another Federal, State, or local
> crime during the term of supervision and that the defendant not unlawfully possess
> a controlled substance. The court shall order as an explicit condition of supervised
> release for a defendant convicted for the first time of a domestic violence crime as
> defined in section 3561(b) that the defendant attend a public, private, or private
> nonprofit offender rehabilitation program that has been approved by the court, in
> consultation with a State Coalition Against Domestic Violence or other appropriate
> experts, if an approved program is readily available within a 50-mile radius of the
> legal residence of the defendant. The court shall order, as an explicit condition of
> supervised release for a person required to register under the Sex Offender
> Registration and Notification Act, that the person comply with the requirements of
> that Act. The court shall order, as an explicit condition of supervised release, that
> the defendant cooperate in the collection of a DNA sample from the defendant, if
> the collection of such a sample is authorized pursuant to section 3 of the DNA
> Analysis Backlog Elimination Act of 2000. The court shall also order, as an explicit
> condition of supervised release, that the defendant refrain from any unlawful use of
> a controlled substance and submit to a drug test within 15 days of release on
> supervised release and at least 2 periodic drug tests thereafter (as determined by the
> court) for use of a controlled substance. The condition stated in the preceding
> sentence may be ameliorated or suspended by the court as provided in section
> 3563(a)(4). The results of a drug test administered in accordance with the
> preceding subsection shall be subject to confirmation only if the results are positive,
> the defendant is subject to possible imprisonment for such failure, and either the
> defendant denies the accuracy of such test or there is some other reason to question
> the results of the test. A drug test confirmation shall be a urine drug test confirmed
> using gas chromatography/mass spectrometry techniques or such test as the
> Director of the Administrative Office of the United States Courts after consultation
> with the Secretary of Health and Human Services may determine to be of equivalent
> accuracy. The court shall consider whether the availability of appropriate substance

abuse treatment programs, or an individual's current or past participation in such programs, warrants an exception in accordance with United States Sentencing Commission guidelines from the rule of section 3583(g) when considering any action against a defendant who fails a drug test. The court may order, as a further condition of supervised release, to the extent that such condition --

(1)    is reasonably related to the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), and (a)(2)(D);

(2)    involves no greater deprivation of liberty than is reasonably necessary for the purposes set forth in section 3553(a)(2)(B), (a)(2)(C), and (a)(2)(D); and

(3)    is consistent with any pertinent policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a);

any condition set forth as a discretionary condition of probation in section 3563(b) and any other condition it considers to be appropriate, provided, however that a condition set forth in subsection 3563(b)(10) shall be imposed only for a violation of a condition of supervised release in accordance with section 3583(e)(2) and only when facilities are available. If an alien defendant is subject to deportation, the court may provide, as a condition of supervised release, that he be deported and remain outside the United States, and may order that he be delivered to a duly authorized immigration official for such deportation. The court may order, as an explicit condition of supervised release for a person who is a felon and required to register under the Sex Offender Registration and Notification Act, that the person submit his person, and any property, house, residence, vehicle, papers, computer, other electronic communications or data storage devices or media, and effects to search at any time, with or without a warrant, by any law enforcement or probation officer with reasonable suspicion concerning a violation of a condition of supervised release or unlawful conduct by the person, and by any probation officer in the lawful discharge of the officer's supervision functions.

18 U.S.C. § 3583(d).

Thus, § 3583 specifies standard and discretionary conditions of supervised release, while, elsewhere, Congress provides for other conduct which, if a defendant commits on supervised release, can result in a revocation of supervised release. Among others, § 3583 provides that the defendant must not commit another federal, State, or local crime during the term of supervision, that the defendant not possess any controlled substances, and that the defendant cooperate in the collection of a DNA sample. See 18 U.S.C. § 3583(d). Further, § 3583 permits a court to craft

special conditions of supervised release that it deems appropriate.  See 18 U.S.C. § 3583(d).

Among those conditions that § 3583 does not list is that the court may revoke supervised release

if the defendant fails to pay a fine or restitution that the court imposes.  See 18 U.S.C. § 3613A

("Upon a finding that the defendant is in default on a payment of a fine or restitution, the court

may, pursuant to section 3565, revoke probation or a term of supervised release . . . .").  In

"determining whether to include a term of supervised release, and if a term of supervised release

is to be included, in determining the length of the term and the conditions of supervised release,"

the court "shall consider the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D),

(a)(4), (a)(5), (a)(6), and (a)(7)."  18 U.S.C. § 3583(c).[2]

**2.      Revocation of Supervised Release.**

Subsection (e)(3) of § 3583 sets forth the process for revoking supervised release:

(e)      **Modification of conditions or revocation.** -- The court may, after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7) --

. . . .

(3)      revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on postrelease supervision, if the court, pursuant to the Federal Rules of Criminal Procedure

---

[2] The Court discusses these eight specific § 3553(a) factors in the next two sections, which focus on a district court's re-imprisonment of a defendant following revocation of a term of supervised release under § 3583(e).  A district court must consider these same eight factors in both contexts.  Section 3583(c) omits § 3553(a)(2)(A), which requires a district court to consider "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense."  Judge Posner of the Seventh Circuit observes regarding this omission: "From the omission of subsection 3553(a)(2)(A), the court in United States v. Murray, 692 F.3d 273, 280 (3d Cir. 2012), inferred 'that the primary purpose of supervised release is to facilitate the reentry of offenders into their communities, rather than to inflict punishment.'"  United States v. Thompson, 2015 WL 151609, at * 2 (7th Cir. Jan. 13, 2015)(Posner, J.).  The Court agrees with that general observation and goal.

> applicable to revocation of probation or supervised release, finds by a preponderance of the evidence that the defendant violated a condition of supervised release, except that a defendant whose term is revoked under this paragraph may not be required to serve on any such revocation more than 5 years in prison if the offense that resulted in the term of supervised release is a class A felony, more than three years in prison if such offense is a class B felony, more than 2 years in prison if such offense is a class C or D felony, or more than one year in any other case . . . .

18 U.S.C. § 3583(e).  Further, under § 3583(h), "[w]hen a term of supervised release is revoked and the defendant is required to serve a term of imprisonment, the court may include a requirement that the defendant be placed on a term of supervised release after imprisonment."  18 U.S.C. § 3583(h).  See Johnson v. United States, 529 U.S. 694, 712-13 (2000)(holding that, even before the addition of Subsection (h) to the statute in 1994, a plain reading of Subsection (e)(3) authorizes district courts to order terms of supervised release following reimprisonment).  The court must find all violations of supervised release by a preponderance of the evidence, regardless of whether the violative conduct itself constitutes criminal conduct.  See 18 U.S.C. § 3583(e).  This standard is different from the ones that apply to a defendant's violation of pretrial release conditions -- mere probable cause for criminal violations and the heightened clear-and-convincing standard for noncriminal violations.  See 18 U.S.C. § 3148(b)(1).

A defendant violates a supervised release condition when the defendant violates the supervised release condition's express terms.  For example, in United States v. Roy, 438 F.3d 140 (1st Cir. 2006), the defendant has two express supervised release conditions: (i) that he respond to the probation officer truthfully; and (ii) that he participate in a mental health treatment program.  See 438 F.3d at 143.  The United States Court of Appeals for the First Circuit concludes that the defendant violates both express conditions, because he lies to his probation officer about having a relationship with a woman, and because a treatment program terminates the defendant for having

- 6 -

unapproved contact with children and being dishonest.  See 438 F.3d at 143.  At least one Court of Appeals concludes that, when a defendant does not participate in activities which the supervised release condition requires, the defendant violates supervised release conditions and faces revocation.  In United States v. Musso, 643 F.3d 566, 570 (7th Cir. 2011), the defendant's sex offender treatment contract requires the defendant, who has a conviction for possessing child pornography, to "participate in group discussions, treatment activities, and written assignments," and states that "simply showing up for sessions is not enough to be considered cooperative with treatment."  643 F.3d at 570.  The United States Court of Appeals for the Seventh Circuit affirms the district judge's conclusion that, because the defendant talks about superficial personal topics instead of the core issues that bring him to treatment, frequently denies, minimizes, or uses a victim stance to avoid accountability for his actions, and does not submit his homework assignments, the defendant does not "participate meaningfully" in sex offender treatment.  643 F.3d at 570.  Furthermore, the defendant violates additional contract terms, including possessing prohibited sexual materials and engaging in prohibited contact with a minor.  See 643 F.3d at 570-71.  According to the Seventh Circuit, the district court, therefore, correctly revokes the defendant's supervised release and imposes new special conditions of supervised release.  See 643 F.3d at 570.  As long as the defendant follows the supervised release conditions' express terms, the court does not revoke supervised release, even if the defendant harbors negative feelings towards the conditions or does not make progress.  See United States v. Hronich, No. CR 11-1789 JB, 2025 WL 1330467, at *1 (D.N.M. May 7, 2025)(Browning, J.)(denying petition to revoke supervised release, because the defendant attends and participates in sex offender treatment to the extent that supervised release special condition's language requires).

      **3.**      **Sentencing Following the Revocation of Supervised Release.**

Consistent with § 3583(e)(2), the United States Court of Appeals for the Tenth Circuit explains: "When a convicted defendant violates a condition of supervised release, the sentencing judge may revoke the term of supervised release and impose prison time." United States v. Patton, 506 F. App'x 729, 731 (10th Cir. 2012)(Brorby, J.)[3](quoting United States v. Vigil, 696 F.3d 997, 1002 (10th Cir. 2012)(O'Brien, J.)(citing 18 U.S.C. § 3584(e))).[4] Considering the sentence, "[t]he judge must consider [certain] factors in 18 U.S.C. § 3553(a) and the policy statements in Chapter 7 of the Sentencing Guidelines." United States v. Patton, 506 F. App'x at 731 (brackets in original). See 18 U.S.C. § 3583(e). 18 U.S.C. § 3583(e)'s relevant portion concerning revocation of supervised release provides that "[t]he court may, after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7) . . . , revoke a

_____

[3] United States v. Patton is an unpublished opinion, but the Court can rely on an unpublished Tenth Circuit opinion to the extent its reasoned analysis is persuasive in the case before it. See 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value."). The Tenth Circuit states:

> In this circuit, unpublished orders are not binding precedent . . . and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005). The Court concludes that United States v. Patton, United States v. Miller, 608 F. App'x 707 (10th Cir. 2015), United States v. Chatburn, 505 F. App'x 713 (10th Cir. 2012), and United States v. Saavedra-Villasenor, 554 F. App'x 767 (10th Cir. 2014), have persuasive value with respect to a material issue, and will assist the Court in its disposition of this Memorandum Opinion and Order.

[4] As the Court describes in the preceding section, under § 3583(h), "[w]hen a term of supervised release is revoked and the defendant is required to serve a term of imprisonment, the court may include a requirement that the defendant be placed on a term of supervised release after imprisonment." 18 U.S.C. § 3583(h). See Johnson v. United States, 529 U.S. 694, 712-13 (2000)(holding that, even before Congress adds Subsection (h) to the statute in 1994, a plain reading of Subsection (e)(3) authorizes district courts to order terms of supervised release following reimprisonment). When a defendant violates conditions of supervised release, therefore, the Court can sentence the defendant to imprisonment and further supervised release.

term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release."  18 U.S.C. § 3583(e).  The relevant § 3553(a) factors are as follows:

(1)    the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)    the need for the sentence imposed --

. . .

(B)    to afford adequate deterrence to criminal conduct;

(C)    to protect the public from further crimes of the defendant; and

(D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

. . .

(4)    the kinds of sentence and the sentencing range established for --

. . . .

(B)    in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

(5)    any pertinent policy statement --

(A)    issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(B)    that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced; or

. . .

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).  See United States v. Patton, 506 F. App'x at 731 n.2 (explaining that 18

U.S.C. § 3583(e) lists the § 3553(a) factors that the Court must consider).[5]  The Tenth Circuit holds

---

[5] "Section 3583(e) does not list Section 3553(a)(2)(A) among the factors district courts should consider in modifying or revoking supervised release."  United States v. Penn, 601 F.3d 1007, 1012 (10th Cir. 2010)(Baldock, J.).  The omitted section, § 3553(a)(2)(A), provides that, in determining the sentence to be imposed, the district court "shall consider . . . the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense."  18 U.S.C. § 3553(a)(2)(A).

The Supreme Court has not addressed whether a district court's consideration of a § 3553(a)(2)(A) factor during revocation sentencing is error.  See United States v. Miller, 608 F. App'x 707, 709 (10th Cir. 2015)(Baldock, J.).  The Courts of Appeals are split on the question.  See United States v. Chatburn, 505 F. App'x 713, 717 (10th Cir. 2012)(Matheson, Jr., J.).  The United States Courts of Appeals for the First, Second, Third, Sixth, and Seventh Circuits conclude that it is not error to consider § 3553(a)(2)(A) factors during revocation sentencing.  See e.g., United States v. Clay, 752 F.3d 1106, 1108-09 (7th Cir. 2014)(Flaum, J.); United States v. Vargas-Davila, 649 F.3d 129, 131-32 (1st Cir. 2011)(Selya, J.); United States v. Young, 634 F.3d 233, 239 (3d Cir. 2011)(Vanaskie, J.); United States v. Lewis, 498 F.3d 393, 399-400 (6th Cir. 2007)(McKeague, J.); United States v. Williams, 443 F.3d 35, 47-48 (2d Cir. 2006)(Kearse, J.).  The United States Court of Appeals for the Fifth, Ninth, and Tenth Circuits, by contrast, conclude that it is error to consider § 3553(a)(2)(A).  See United States v. Miller, 634 F.3d 841, 844 (5th Cir. 2011)(Garza, J.); United States v. Miqbel, 444 F.3d 1173, 1182 (9th Cir. 2006)(Reinhardt, J.); United States v. Booker, 63 F.4th 1254, 1259-60 (10th Cir. 2023).  The United States Courts of Appeals for the Fourth Circuit initially joins the Fifth and Ninth Circuits, holding that, "[a]ccording to § 3553(a)(2)(A), in devising a revocation sentence the district court is not authorized to consider whether the revocation sentence 'reflect[s] the seriousness of the offense, . . . . promote[s] respect for the law, and . . . provide[s] just punishment for the offense.'"  United States v. Crudup, 461 F.3d 433, 439 (4th Cir. 2006)(Shedd, J.).  Seven years later, the Fourth Circuit limits United States v. Crudup's holding in United States v. Webb, 738 F.3d 638 (4th Cir. 2013)(Floyd, J.):

> A district court's meaningful consideration of the enumerated § 3553(a) factors when imposing a revocation sentence typically will include analysis that furthers the purposes of post-revocation incarceration.  Given that the § 3553(a)(2)(A) factors are closely related to the factors district courts are instructed to consider under § 3583(e), we fail to see how a district court's reference to the § 3553(a)(2)(A) sentencing considerations, without more, would automatically render a sentence unreasonable.  Accordingly, although a district court may not impose a revocation sentence based predominantly on the seriousness of the releasee's violation or the need for the sentence to promote respect for the law and provide just punishment, we conclude that mere reference to such considerations does not render a revocation sentence procedurally unreasonable

when those factors are relevant to, and considered in conjunction with, the enumerated § 3553(a) factors.

United States v. Webb, 738 F.3d at 641-42.  The Ninth Circuit, likewise, later rules that its holding in United States v. Miqbel, 444 F.3d at 1182, does not make reliance upon a § 3553(a)(2)(A) factor improper per se, explaining:

> [W]e did not set forth a blanket proposition that a court in no circumstances may consider the seriousness of the criminal offense underlying the revocation.  The seriousness of the offense underlying the revocation, though not a focal point of the inquiry, may be considered to a lesser degree as part of the criminal history of the violator.
>
> . . . .
>
> To ignore the new violation underlying the revocation entirely would be to ignore a key predictor of a violator's potential for reintroduction into society without relapse.  See, e.g., United States v. Tadeo, 222 F.3d 623, 626 (9th Cir. 2000)(finding no abuse of discretion where the court found that the use of narcotics in violation of supervised release created a risk that the defendant would commit serious crimes because some of his past criminal activity occurred while under the influence).  The history of the violator, when combined with the violator's most recent criminal offenses, and particularly when similar to the past transgressions, is indicative of the violator's propensity for recidivism and inability to integrate peacefully into a community.  See id.; U.S.S.G.M. Ch.7, Pt. A(4) (2006) (determining "that the purpose of . . . supervised release should focus on the integration of the violator into the community, while providing the supervision designed to limit further criminal conduct"); see also 18 U.S.C. §§ 3553(a)(2)(B)(2003)(affording deterrence as one consideration) and 3553(a)(2)(C)(2003)(protecting the public from further crimes as another); 18 U.S.C. § 3583(e) (permitting the preceding factors for consideration in revocation sentences).  A history of, for example, drug-related offenses, combined with a drug-related offense underlying revocation, as is the case here, creates a greater likelihood that the violator will relapse into the same or similar criminal activity. A violator who, after committing an offense and being placed on supervised release for that offense, again commits a similar offense is not only more likely to continue on that path, but also has demonstrated to the court that the violator has little respect for its command.  Because the district court's trust in the violator's ability to coexist in society peacefully has been broken to a greater degree than if the violator had committed a minor offense of a dissimilar nature, greater sanctions may be required to deter future criminal activity.  Consequently, if the nature and the severity of the underlying offense were removed from the equation altogether, the court's ability to predict the violator's potential for recidivism and to punish the violator for the violator's full breach of trust (and, ultimately, to deter the violator and to protect the public) would be impaired significantly.

that, at revocation sentencing, consideration of any other factors beyond § 3553(a), as well as any § 3553(a) factors that §3583(e) does not enumerate explicitly -- such as the need for retribution -- is improper.  See United States v. Booker, 63 F.4th 1254, 1259-60 (10th Cir. 2023).  In United States v. Booker, the Tenth Circuit applies to revocation sentencings its prior holding from United States v. Smart, 518 F.3d 800, 803-04 (10th Cir. 2008)("Smart"), that any consideration of sentencing factors that § 3553(a) does not enumerate is procedural error.  United States v. Booker, 63 F.4th at 1259.  The Tenth Circuit explains that its holding in Smart also applies to revocation sentencings, "because § 3583(e) also requires courts to consider certain § 3553(a) factors when sentencing after a supervised release violation."  United States v. Booker, 63 F.4th at 1259 (citing United States v. McBride, 633 F.3d 1229, 1231 (10th Cir. 2011)).  Then, the Tenth Circuit

---

United States v. Simtob, 485 F.3d 1058, 1062-63 (9th Cir. 2007)(Ezra, J.).

Before the Tenth Circuit's decision in United States v. Booker, the Court thought that, like the Fifth and Ninth Circuits, it is not error to consider the § 3553(a)(2)(A) factors during revocation sentencing, and still thinks that it is not error and is probably the better rule.  The Court must apply, however, Tenth Circuit precedent.  Now, where there is a revocation, given United States v. Booker, the Court strives not to consider respect for the law, just punishment, and the seriousness of the offense.  The Court believes the solution and best practice is to keep always in mind what Judge Posner and the Third Circuit emphasize -- "that the primary purpose of supervised release is to facilitate the reentry of offenders into their communities, rather than to inflict punishment." United States v. Thompson, 2015 WL 151609, at *2 (quoting United States v. Murray, 692 F.3d 273, 280 (3d Cir. 2012)(Fuentes, J.)).  The Court is mindful that all it does should help the defendant ease back into society after a sometimes lengthy prison sentence, and the Court tries not to punish the defendant, although sometimes incarceration is necessary, and Congress expressly authorizes incarceration to get the defendant to do what the Court and the USPO tell him or her to do.

The Court makes one other observation.  When Congress and the Court say the word "offense" at a violation hearing, the question is whether it is referring to the underlying offense or to the violation.  The Court can consider both, but again, in meeting supervised release's goals, the emphasis should be on the violation and not on the underlying offense.  For example, when it considers the "nature and circumstances of the offense," it may consider how the defendant arrived before the Court, but its focus and emphasis in coming up with a disposition should be on the new violation's nature and circumstances.  If the Court considers the offense's seriousness, the underlying offense's seriousness is largely irrelevant, unless the violation is the same thing as the underlying offense.  In any case, the Court should focus and emphasize, if the Court considers seriousness at all, the new violation's seriousness.

explains: "Because we read § 3583(e) to set forth those sentencing factors that courts must consider, the subsection 'implicitly forbids consideration' of any other § 3553(a) factors when modifying or revoking a term of supervised release." United States v. Booker, 63 F.4th at 1260 (quoting Smart, 518 F.3d at 803-04). The Tenth Circuit concludes that "the omission of § 3553(a)(2)(A) from the sentencing factors enumerated in § 3583(e) precludes a court from considering the need for retribution when modifying or revoking a term of supervised release." United States v. Booker, 63 F.4th at 1260. The district court, in United States v. Booker, thus, errs, because it "directly quoted" from § 3553(a)(2)(A) when explaining the reasons for Booker's sentence, and § 3553(a)(2)(A) is a factor the district court cannot consider when modifying or revoking Booker's term of supervised release. 63 F.4th at 1262.[6]

In particular, a district court must consider the policy statements in Chapter 7 of the Guidelines before imposing a sentence for violations of supervised release's conditions. See United States v. Vigil, 696 F.3d at 1002; United States v. Kelley, 359 F.3d 1302, 1304-05 (10th Cir. 2004)(Ebel, J.). The Guidelines' commentary is an authoritative interpretation of the rules. See Stinson v. United States, 508 U.S. 36, 38 (1993). "[T]he Chapter 7 provisions dealing with violations of supervised release are not mandatory sentencing guidelines; rather, they merely

---

[6]The Court notes that, in United States v. Booker, the Tenth Circuit concludes that the district court's error in considering § 3553(a)(2)(A) does not affect the defendant's substantial rights. See United States v. Booker, 63 F.4th at 1262. The Tenth Circuit explains:

> We concluded that a single reference to punishment did not affect the defendant's substantial rights. [United States v. Penn, 601 F.3d 1007, 1012 (10th Cir. 2010)]. The court did not rely on the need for punishment in setting forth his initial reasons for the new sentence based upon violation of the terms of supervised release, and only raised it after defense counsel objected to his client receiving a high-end sentence.

United States v. Booker, 63 F.4th at 1263.

constitute advisory 'policy' statements." United States v. Contreras-Martinez, 409 F.3d 1236, 1240 (10th Cir. 2005)(quoting United States v. Tsosie, 376 F.3d 1210, 1218 (10th Cir. 2004)). See United States v. Lee, 957 F.2d 770, 773-74 (10th Cir. 1992)(stating that "the policy statements regarding revocation of supervised release contained in Chapter 7 of the U.S.S.G. are advisory rather than mandatory in nature," and that "they must be considered by the trial court in its deliberations concerning punishment for violation of conditions of supervised release").

"All discussions of applicable sentences before a district court following the revocation of supervised release 'should be grounded in the common understanding that the district court may impose any sentence within the statutory maximum.'" United States v. Burdex, 100 F.3d 882, 885 (10th Cir. 1996)(Henry, J.)(quoting United States v. Hofierka, 83 F.3d 357, 362 (11th Cir. 1996)). While district courts must consider Chapter 7's policy statements in imposing sentences after revocation of supervised release, "'[m]agic words, however, are not required to demonstrate fulfillment of this requirement.'" United States v. Vigil, 696 F.3d 997, 1002 (10th Cir. 2012)(quoting United States v. Tedford, 405 F.3d 1159, 1161 (10th Cir. 2005)). "Rather, it is enough if the district court considers § 3553(a) en masse and states its reasons for imposing a given sentence." United States v. Penn, 601 F.3d at 1011.

**LAW REGARDING SUPERVISED RELEASE REVOCATION AND REVOCATION HEARINGS**

Subsection (e)(3) of § 3583 permits courts to revoke supervised release on the conclusion, by a preponderance of the evidence, that the defendant violates a condition of probation. See 18 U.S.C. § 3583(e). Section 3583(e)(3) sets forth the process for revoking supervised release:

> **(e)     Modification of conditions or revocation.** -- The court may, after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7) --
>
> . . . .

- 14 -

(3)     revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on postrelease supervision, if the court, pursuant to the Federal Rules of Criminal Procedure applicable to revocation of probation or supervised release, finds by a preponderance of the evidence that the defendant violated a condition of supervised release, except that a defendant whose term is revoked under this paragraph may not be required to serve on any such revocation more than 5 years in prison if the offense that resulted in the term of supervised release is a class A felony, more than three years in prison if such offense is a class B felony, more than 2 years in prison if such offense is a class C or D felony, or more than one year in any other case . . . .

18 U.S.C. § 3583(e).  "Preponderance of the evidence" is "evidence sufficient to persuade you that a fact is more likely present than not present."  Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit, Criminal Pattern Jury Instructions § 1.05.1, at 10 (2025 ed.).  Preponderance of the evidence is:

> The greater weight of the evidence, not necessarily established by the greater number of witnesses testifying to a fact but by evidence that has the most convincing force; superior evidentiary weight that, though not sufficient to free the mind wholly from all reasonable doubt, is still sufficient to incline a fair and impartial mind to one side of the issue rather than the other.

"Preponderance of the Evidence," Black's Law Dictionary 18(c) (12th ed. 2024).

Where, as here, the parties contest revocation of supervised release, courts must hold a revocation hearing.  See Fed. R. Crim. P. 32.1(b)(2).  Rule 32.1 of the Federal Rules of Criminal Procedure governs revocation hearings.  See Fed. R. Crim. P. 32.1.  Rule 32.1 provides in relevant part:

(2)     Revocation Hearing. Unless waived by the person, the court must hold the revocation hearing within a reasonable time in the district having jurisdiction. The person is entitled to:

> (A)    written notice of the alleged violation;
>
> (B)    disclosure of the evidence against the person;
>
> (C)    an opportunity to appear, present evidence, and question any adverse witness unless the court determines that the interest of justice does not require the witness to appear;
>
> (D)    notice of the person's right to retain counsel or to request that counsel be appointed if the person cannot obtain counsel; and
>
> (E)    an opportunity to make a statement and present any information in mitigation . . . .

Fed. R. Crim. P. 32.1(b).

Although rule 32.1(b)(2) provides for a revocation hearing, the hearing is "not a formal trial."  Comment to Rule 32.1(a)(2).  Instead, revocation hearings are to be more flexible and inclusive than criminal trials.  See Morrissey v. Brewer, 408 U.S. 471, 489 (1972).[7]  The parties may call witnesses and present evidence, but the process "should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial."  Morrissey v. Brewer, 408 U.S. at 489.  To that end, the Federal Rules of Evidence do not apply in revocation hearings.  See Fed. R. Evid. 1101(d)(3) ("These rules -- except for those on privilege -- do not apply to . . . miscellaneous proceedings such as . . . granting or revoking probation or supervised release . . . ."); United States v. Diaz, 986 F.3d 202, 209 (2d Cir. 2021).

---

[7] Rule 32.1 was adopted in 1979.  See Advisory Committee Notes on Fed. R. Crim. P. 32.1.  It replaces the former "revocation of parole" system with a new "revocation of supervised release" system.  Advisory Committee Notes on Fed. R. Crim. P. 32.1.  The Supreme Court decides Morrissey v. Brewer in 1972, before rule 32.1's adoption.  Accordingly, the Supreme Court's analysis concerns revocation of parole and not of revocation of supervised release.  Nevertheless, the Tenth Circuit interprets Morrissey v. Brewer to apply to revocation of supervised release.  See Jones, 818 F.3d at 1098-99 (discussing Morrissey v. Brewer as part of rule 32.1's history and development).

Also in service of flexibility and inclusivity, defendants have a lesser right to confrontation in revocation hearings.  See Jones, 818 F.3d at 1098.  "The Sixth Amendment [to the Constitution of the United States of America] is a trial right" and does not apply to revocation hearings.  United States v. Hernandez, 778 F. Supp. 2d 1211, 1225 (D.N.M. 2011)(Browning, J.).  Rule 32.1 of the Federal Rules of Criminal Procedure gives, however, the defendant at the revocation hearing "an opportunity to appear, present evidence, and question any adverse witness unless the court determines that the interest of justice does not require the witness to appear."  Fed. R. Crim. P. 32.1(b)(2)(c).  Instead of running through a standard confrontation analysis like the one that the Supreme Court mandates in Crawford v. Washington, 541 U.S. 36 (2004)("Crawford"), courts presiding over revocation hearings engage in a balancing test, Jones, 818 F.3d at 1099-100.  When the United States relies on a non-testifying declarant's out-of-court statement in a revocation hearing, the court "must determine whether the 'interest of justice does not require the witness to appear' by balancing (1) 'the person's interest in the constitutionally guaranteed right to confrontation' against (2) 'the government's good cause for denying it.'"  Jones, 818 F.3d at 1099-100 (quoting Advisory Committee Notes to the 2002 Amendment to Fed. R. Crim. P. 32.1).  See Rule 32.1 Advisory Committee's Note to the 2012 Amendment (instructing courts to apply a balancing test that weighs "the person's interest in the constitutionally guaranteed right to confrontation against the government's good cause for denying it"); United States v. Hernandez, 428 F. Supp. 3d at 788 ("When applying the balancing test, the Court must weigh the defendant's interest in cross-examining and confronting [a] witness with the government's good cause for not presenting the witness." (citing Jones, 818 F.3d at 1098)).  The testimony's "reliability is a very important factor in determining the strength of a releasee's confrontation right.'"  Jones, 818 F.3d at 1100 (quoting Curtis v. Chester, 626 F.3d 540, 546 (10th Cir. 2010)(emphasis omitted in Jones,

but in <u>Curtis v. Chester</u>)).   The Tenth Circuit uses this balancing test "when determining a releasee's confrontation rights at a revocation hearing." <u>Jones</u>, 818 F.3d at 1099.  <u>See</u>, <u>e.g.</u>, <u>United States v. Hykes</u>, 653 F. Supp. 3d 913, 917 (D.N.M. 2022)(Browning, J.)(making findings of fact in a revocation of supervised release memorandum opinion and order based on evidence that survives the balancing test that the Tenth Circuit adopts in <u>Jones</u>, 818 F.3d at 1098); <u>United States v. Calvert-Cata</u>, No. CR 16-4566 JB, 2022 U.S. Dist. LEXIS 194756, at *30-31 (D.N.M. October 26, 2022)(Browning, J.)(determining, in the alternative that, even if it must apply the <u>Jones</u>, 818 F.3d at 1098, balancing test to the victim's out-of-court statements, the statements are admissible, because the United States has good cause not to call the witness to testify at the revocation hearing).

Although rule 32.1 and the <u>Jones</u> balancing test aim to decrease procedural protections for defendants in revocation hearings and increase the universe of evidence courts can consider in those hearings, in practice, rule 32.1 and <u>Jones</u> may limit evidence unnecessarily and unwisely.  In some instances, rule 32.1 compels courts presiding over revocation hearings to disregard out-of-court statements even though those same out-of-court statements are admissible under the Federal Rules of Evidence and <u>Crawford</u> if offered at trial, regardless whether the declarant is available to testify at the trial.[8]  Those instances are troubling for two reasons.  First, defendants in those cases

---

[8]The Court confronts a similar issue in <u>United States v. Hernandez</u>, 428 F. Supp. 3d 775. There, an officer responds to a domestic disturbance in Rio Rancho, New Mexico.  <u>See</u> 428 F. Supp. 3d at 782.  When the officer arrives at the scene, the victim "appeared distressed," and tells the officer that the defendant assaulted her and attempted to set fire to a kitchen, among other things.  428 F. Supp. 3d at 782.  The defendant is on supervised release at the time, and the USPO's probation officer subsequently petitions to revoke his supervised release.  <u>See</u> 428 F. Supp. 3d at 780.  At the hearing, the United States does not call the victim, but relies on her statements to the officer on the scene.  <u>See</u> 428 F. Supp. 3d at 781.  The Court applies the <u>Jones</u> balancing test and determines that it cannot consider the victim's out-of-court statements to the officer.  <u>See</u> 428 F. Supp. 3d at 788.  Those out-of-court statements, however, are admissible hearsay in a trial setting as either a present sense impression or excited utterance.  <u>See</u> Fed. R. Evid. 803(1), (2).  Given the Court's recent decisions in <u>United States v. Chavez</u>, No. CR 15-3557 JB, 2023 WL 5672594 (D.N.M. Sept. 1, 2023)(Browning, J.), and <u>United States v. Green</u>, No. CR 06-2605 JB, 2022 WL

receive a greater right to confrontation in the revocation context than they do in the trial context. It is difficult -- if not impossible -- to square that outcome with the Tenth Circuit's guidance that defendants are supposed to have a more limited right to confrontation in the revocation setting than they do in the trial setting. See Jones, 818 F.3d at 1098. Second, courts in revocations must rely on smaller universes of evidence than they do in the trial setting. Again, it is difficult -- if not impossible -- to reconcile that result with the Supreme Court's guidance in Morrissey v. Brewer that courts presiding over revocation hearings should be able to consider "material that would not be admissible in an adversary criminal trial." 408 U.S. at 489.

The Honorable Andrew S. Oldham, United States Circuit Judge for the United States Court of Appeals for the Fifth Circuit, documents this paradox in his concurring opinion in United States v. Alvear, 959 F.3d 185, 191 (5th Cir. 2020)(Oldham, J., concurring). In his concurrence, Judge Oldham discusses "three oddities" in rule 32.1 caselaw. United States v. Alvear, 959 F.3d at 193 (Oldham, J., concurring).[9] First, he notes that "it's unclear what if anything the Due Process Clause adds to the protections of Rule 32.1(b)(2)(C)." United States v. Alvear, 959 F.3d at 193 (Oldham, J., concurring). Second, he observes that, "instead of applying Rule 32.1(b)(2)(C), many of our decisions in this area contain nary a citation to it." United States v. Alvear, 959 F.3d at 193

---

1184650 (D.N.M. April 21, 2022)(Browning, J.), aff'd, No. 22-2062, 2023 WL 4195884 (10th Cir. June 27, 2023), the Court would admit these out-of-court statements today.

[9]The Fifth Circuit does not use the Jones test. It uses, however, a balancing test analogous to Jones test, as does every other Court of Appeals that has handled a rule 32.1 issue. See United States v. Taveras, 380 F.3d 532, 536 (1st Cir. 2004); United States v. Chin, 224 F.3d 121, 124 (2d Cir. 2000); United States v. Lloyd, 566 F.3d 341, 344 (3d Cir. 2009); United States v. Doswell, 670 F.3d 526, 530 (4th Cir. 2012); Barnes v. Johnson, 184 F.3d 451, 454 (5th Cir. 1999); United States v. Jackson, 422 F. App'x 408, 410-11 (6th Cir. 2011)(unpublished); United States v. Jordan, 742 F.3d 276, 279 (7th Cir. 2014); United States v. Bell, 785 F.2d 640, 642 (8th Cir. 1986); United States v. Comito, 177 F.3d 1166, 1170 (9th Cir. 1999); United States v. Frazier, 26 F.3d 110, 114 (11th Cir. 1994); United States v. Stanfield, 360 F.3d 1346, 1360 (D.C. Cir. 2004).

(Oldham, J., concurring).  Finally, he describes, "oddest of all, sometimes confrontation rights in a revocation hearing can be <u>broader</u> than the confrontation right at trial." <u>United States v. Alvear</u>, 959 F.3d at 193 (Oldham, J., concurring)(emphasis in original).

> The Supreme Court has told us that protections in a revocation hearing are (at most) the same as those at trial.  <u>See</u> <u>United States v. Haymond</u>, -- U.S. --, 139 S.Ct. 2369, 2378-79 . . . (2019)(plurality opinion); <u>id</u>. at 2385-86 (Breyer, J., concurring in the judgment).  That result creates its own difficulties.  <u>See</u> <u>id</u>. at 2390-91 (Alito, J., dissenting).  But it's an altogether different problem to make the constitutional protections in the revocation hearing broader than at trial.  After all, one premise of our system is that post-conviction rights are generally narrower because "[o]nce a defendant has been afforded a fair trial and convicted of the offense for which he was charged, the presumption of innocence disappears." <u>Herrera v. Collins</u>, 506 U.S. 390, 399 . . . (1993).  But when we ask different questions under the Confrontation Clause at trial (is the statement "testimonial"?) and under the Due Process Clause at revocation (is there "good cause" to admit the statement?), we can get incongruous answers.
>
> Consider an example.  A boyfriend violently attacks his girlfriend who then immediately calls 911.  The Government wants to use her statements to the 911 operator against the boyfriend.  At trial, the defendant has no right to prevent the introduction of these statements under the Confrontation Clause because they're not "testimonial." [Ohio v. ]<u>Clark</u>, [576 U.S. 237 (2015)] (citing <u>Davis v. Washington</u>, 547 U.S. 813, 820 . . . (2006)).  But this same 911 call is almost certainly hearsay.  So at the boyfriend's revocation hearing, he can object to the introduction of the statements under the Due Process Clause, unless there is "good cause" to admit them.  <u>See</u>, <u>e.g.</u>, [United States v. ]<u>Jimison</u>, 825 F.3d [260,] 263 [(2016)].
>
> The oddities don't end there.  The Federal Rules of Evidence apply at trial.  And they provide for the admission of all sorts of hearsay: an excited utterance, a statement made for medical treatment, a present sense impression, a business record, a statement against interest.  <u>See</u> Fed. R. Evid. 803, 804.  But the hearsay rules in the Federal Rules of Evidence do not apply in revocation hearings.  Fed. R. Evid. 1101(d)(3) . . . .  So if the Government wants to use these same (otherwise-admissible) hearsay statements at a revocation hearing, the court has to apply the "good cause" analysis demanded by the Due Process Clause.  That's an additional hurdle that applies post-conviction that does not apply pre-conviction.  How odd.

<u>United States v. Alvear</u>, 959 F.3d at 194 (Oldham, J., concurring).

Although 18 U.S.C. § 3583(e) establishes the maximum terms of imprisonment upon the revocation of a defendant's supervised release, the U.S.S.G establishes revocation imprisonment

ranges based on the defendant's criminal history category and the violation grade. U.S.S.G. § 7B1.4(a). The Guidelines establish three violation categories:

(1) GRADE A VIOLATIONS -- conduct constituting (A) a federal, state, or local offense punishable by a term of imprisonment exceeding one year that (i) is a crime of violence, (ii) is a controlled substance offense, or (iii) involves possession of a firearm or destructive device of a type described in 26 U.S.C. § 5845(a); or (B) any other federal, state, or local offense punishable by a term of imprisonment exceeding twenty years;

(2) GRADE B VIOLATIONS -- conduct constituting any other federal, state, or local offense punishable by a term of imprisonment exceeding one year;

(3) GRADE C VIOLATIONS -- conduct constituting (A) a federal, state, or local offense punishable by a term of imprisonment of one year or less; or (B) a violation of any other condition of supervision.

U.S.S.G. § 7B1.2(a) (capitalization in original). In determining the applicable revocation imprisonment range, the Guidelines instruct that courts apply the criminal history category applicable at the time of the defendant's underlying sentencing. See U.S.S.G. § 7B1.4 cmt. n.1.

## ANALYSIS

The primary issue before the Court is whether Mills commits, as a matter of law, a Grade C violation of supervised release, where a mandatory condition prohibits the commission of any federal, state, or local crime, and Mills pleads guilty to violating the City of Rio Rancho's Municipal Ordinance 12-6-18, resulting only in the imposition of a fine. See 2026 Tr. at 6:13-7:19 (Hoswell). See City Code of Rio Rancho, N.M., Municipal Code § 12-6-18. Mills does not dispute the Petition's factual allegations, see 2026 Tr. at 5:11-12, but instead raises a legal challenge, arguing that the violation does not qualify as a Grade C violation, because the violation does not expose him to imprisonment. See 2026 Tr. at 7:6-9 (Hoswell)("But at this point and what he was cited for its not. He couldn't have faced, from my understanding he couldn't have faced any term of incarceration . . . ."). The Court concludes that Mills commits a Grade C violation as a matter

of law, because the Guidelines require courts to consider "how the actual conduct giving rise to the violation is *punishable* under applicable law," United States v. Saavedra-Villasenor, 554 F. App'x 767, 771 (10th Cir. 2014)(unpublished)("Saavedra-Villasenor")(italics in the original). Here, the dispute turns on the interpretation of "punishable" under U.S.S.G. § 7B1.1, and not on the penalty actually imposed. Saavedra-Villasenor, 554 F. App'x at 771.

## I.    THE GUIDELINES' FOCUS ON POTENTIAL PUNISHMENT, COUNSELS THAT MILLS' COMMITS A GRADE C VIOLATION.

The Guidelines define a Grade C violation as conduct constituting "a federal, state, or local offense punishable by a term of imprisonment of one year or less," or a violation of any other condition of supervision. U.S.S.G. § 7C1.1(a)(3). Mills concedes that § 12-6-18 constitutes a "local offense," but argues that it falls outside this definition because the only penalty he faces is a fine. 2026 Tr. at 7:3-6 ("So if he had been cited under one of the codes that uses the maximum penalty of up to 90 days, I think certainly that would fall under a Grade C violation."). The relevant inquiry is not the penalty imposed in a particular case, see Saavedra-Villasenor, 554 F. App'x at 771 ("[T]he actual sentence imposed . . . is not the proper measure for classifying that offense as either a Grade B or Grade C violation."), but whether the government can punish the offense with a term of imprisonment.

The Tenth Circuit adopts this definition of "punishable" in United States v. Hernandez–Garduno, 460 F.3d 1287 (10th Cir. 2006) and later applies the definition to supervised release violation categories in Saavedra-Villasenor. See Saavedra-Villasenor, 554 F. App'x at 771 ("We have previously held that the word 'punishable' encompasses the full scope of punishment possible for an offense, 'irrespective of the actual sentence imposed.'" (quoting United States v. Hernandez–Garduno, 460 F.3d at 1293)). In Saavedra-Villasenor, the Tenth Circuit rejects the argument that the grade of a violation depends on the sentence the court imposes, explaining that

the analysis turns on the "full scope of punishment possible for an offense." 554 F. App'x at 771. The Tenth Circuit joins the United States Court of Appeals for the District of Columbia, see Schrader v. Holder, 704 F.3d 980, 986 (D.C. Cir. 2013)(emphasizing "the commonsense meaning of the term 'punishable,' which refers to any punishment capable of being imposed"), and for the United States Court of Appeals for the Ninth Circuit, United States v. Denton, 611 F.3d 646, 651 (9th Cir. 2010)("Whether a defendant has committed a Grade A or Grade C violation of his supervised release depends on the potential punishment for the underlying offense."). Accordingly, the Court must determine whether the government may punish a § 12-6-18 violation with a term of imprisonment, regardless of whether the State imposes imprisonment.

## II.   THE RIO RANCHO MUNICIPAL CODE AUTHORIZES UP TO NINETY DAYS OF IMPRISONMENT, MAKING THIS A GRADE C VIOLATION.

Rio Rancho Municipal Code Article VI governs traffic regulations, including the provision that Mills violates, which prohibits the use of electronic devices while driving. See Petition at 1-2; City Code § 12-6-18. The ordinance does not specify, however, a penalty for violating the ordinance. See City Code § 12-6-18. The Court therefore turns to Article XII, which governs penalties for violations of Article VI. See City Code § 12-12 ("Penalties and Procedures on Arrest"). Section 12-12-1.1 provides:

> Unless another penalty is expressly provided in this ordinance or as otherwise provided by state law, every person convicted of a violation of any provision of this ordinance shall be punished by a fine of not more than $500 or by imprisonment for not more than 90 days or by both such fine and imprisonment.

City Code § 12-12-1.1. Mills offers no authority demonstrating that § 12-6-18 is exempt from this general penalty provision. Instead, Mills directs the Court to § 12-12-1.2, which establishes a Penalty Assessment Program, arguing Appendix A's fine is the maximum penalty that he faces for the violation. See 2026 Tr. at 22:10-12 (Hoswell)("Here, the maximum penalties expressly

- 23 -

provided [] [is] a hundred dollar[s] . . . .").   Appendix A assigns a $100.00 penalty to violations of § 12-6-18.  See City Code § 12-12-1.2 (Appendix A: 12-6-18).  From this assignment , Mills argues that imprisonment is not an available punishment in the absence of a notation in the Appendix.

This argument conflates an "elect[ive]" administrative resolution with the maximum penalty that the law authorizes.  City Code § 12-12-1.2(C).  The Penalty Assessment Program provides a mechanism by which a defendant may resolve certain violations by paying a fine, thereby avoiding further proceedings.  See City Code § 12-12-1.2.  Section 12-12-1.2(G) states:

> Whenever a person is arrested for violation of a penalty assessment misdemeanor and elects to pay the penalty assessment, the arresting officer, using the uniform traffic citation, shall complete the information section and prepare the penalty assessment notice indicating the amount of the penalty assessment, have the arrested person sign the agreement to pay the amount prescribed, give a copy of the citation to the arrested person and release him from custody. No officer shall accept custody or payment of any penalty assessment. If the arrested person declines to accept a penalty assessment notice, the officer shall issue a notice to appear.

City Code § 12-12-1.2(G).  The Penalty Assessment Program does not alter the statutory maximum penalty.  The situation is similar to a rule 11(c)(1)(C) plea agreement in the Federal Rules of Criminal Procedure.  See Fed. R. Crim. P. 11(c)(1)(C).  Through the plea agreement, the defendant elects to lower the maximum penalty in exchange for something else, such as avoiding trial, but the parties' agreement does not alter the imprisonment that is otherwise available.

Indeed, § 12-12-1.2(C) confirms that imprisonment remains available if the Defendant elects to proceed to court:

> When an alleged violator of a penalty assessment misdemeanor elects to accept a notice to appear in lieu of a notice of penalty assessment, no fine imposed upon later conviction shall exceed the penalty assessment established for the particular penalty assessment misdemeanor and no probation imposed upon a suspended or deferred sentence shall exceed ninety days.

City Code § 12-12-1.2(C). This provision demonstrates that, if Miles declines the penalty assessment and proceeds to adjudication, he may face penalties that include imprisonment, subject to a ninety-day limitation. Accordingly, although Mills elects to pay a fine, the offense remains punishable by imprisonment and therefore falls within the definition of a Grade C violation.

### III.    THE ABSENCE OF A CRIMINAL CONVICTION DOES NOT PRECLUDE A GRADE C VIOLATION.

Mills further argues that his violation does not qualify as a Grade C violation, because it is not "criminal," relying on New Mexico's statute § 31-19A-1. See 2026 Tr. at 7:11-15 (Hoswell)(stating that "there is case law . . . [which indicates that] NMSA 31-19A-1 [] says that a payment of a fine," pursuant to the Penalty Assessment Program, "should not be considered a criminal conviction"). See State v. Parrish, No. A-1-CA-39449, 2022 WL 1211107 at *2 (N.M. Ct. App. Apr. 25, 2022)("Our Legislature was clear that a penalty assessment is not a crime in New Mexico." (citing N.M. Stat. Ann. § 31-19A-1)). Section 31-19A-1 provides that payment of a fine pursuant to a penalty assessment "shall not be considered a criminal conviction." N.M. Stat. Ann. § 31-19A-1. This argument is unpersuasive for two reasons. First, the statute distinguishes between a "criminal conviction" and the underlying conduct. See N.M. Stat. Ann. § 31-19A-1. The statute does not render the conduct non-criminal; it limits the legal consequences of resolving the violation through a penalty assessment. Second, the Guidelines indicate that a court may find a supervised release violation "whether or not the defendant has been the subject of a separate federal, state, or local prosecution." U.S.S.G. § 7B1.1 cmt. 1. The Tenth Circuit likewise explains that the grade of a violation "'does not depend upon the conduct that is the subject of criminal charges or of which the defendant is convicted.'" Saavedra-Villasenor, 554 F. App'x at 772 (quoting U.S.S.G. § 7B1.1 cmt. 1). Thus, even if Mills' payment of the fine does not constitute a criminal conviction, his conduct -- violating a municipal ordinance that the government can punish

by imprisonment -- remains sufficient to constitute a Grade C violation. The Guidelines direct courts to assess the "punishability" of the conduct, and not the case's procedural disposition.

Because, under § 12-6-18, the government can punish Mills by up to ninety days imprisonment, Mills' violation qualifies as a Grade C violation under U.S.S.G. § 7B1.1. That Mills elects to resolve the violation by paying a fine does not alter this conclusion. Accordingly, the Court concludes that Mills violates a mandatory condition of supervised release by committing a local crime and therefore has committed a Grade C violation.

**IT IS ORDERED** that the: (i) Defendant Jean Claud Mills has violated his mandatory condition of supervised release that he "must not commit another federal, state, or local crime"; (ii) Mills commits a Grade C violation pursuant to the United States Sentencing Guidelines § 7B1.1; (iii) Mills' criminal history category is VI; and (iv) Mills' Grade C violation and criminal history category of VI, under the United States Sentencing Guidelines § 7B1.1, establishes a revocation imprisonment range of 8 to 14 months.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Todd Blanche
  Acting United States Attorney General
Ryan Ellison
  First Assistant United States Attorney
Mia Rubin
  Assistant United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

      *Attorneys for the Plaintiff*

Jacqueline Hoswell
The Law Office of Ryan J. Villa, LLC
Albuquerque, New Mexico

      *Attorneys for the Defendant*